26 C.C.P.A.(Patents)

HEDDON v. COWDERY et al.

Patent Appeal No. 4046.

Court of Customs and Patent Appeals.

Dec. 19, 1938.

Samuel W. Banning, of Chicago, Ill., for appellant.

Frank M. Slough, of Cleveland, Ohio, for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences in an interference proceeding, involving ten counts relating to the subject-matter of metallic fishing rods, the subject-matter being illustrated by counts 1, 5, and 9, reading as follows:

"1. A flexible metallic fishing rod of tapering tubular construction having the walls progressively thickening and the diameter progressively decreasing toward the tip, and the diameter of the bore in the tip region being less than the combined thickness of the walls, giving to the tip region the functional characteristics of a solid rod in resisting a tendency to buckle inwardly."

"5. A drawn tubular tapered metallic fishing rod characterized by the fact that the ratio of tapering differs in different portions of the rod."

"9. A fishing rod made of tubular metallic separable sections, a plurality of which are exteriorly tapered and wherein a plurality of the sections are of varying wall thickness, the ratio of variation in wall thickness being different in each of the plurality of said sections."

Heddon is the senior party, and is a patentee. He holds three patents. Appellees are applicants, two applications by them being involved. Both of these applications were filed subsequent to the issu-

ance of the three patents to Heddon. All the counts originated in the Heddon patents.

Counts 1, 2, and 3 originated as claims 3, 4, and 5 of Heddon's patent No. 1,961,-968, granted June 5, 1934, upon an application filed December 23, 1932. They appear as claims 18, 19, and 20 in an application, serial No. 738,102, filed by appellees August 2, 1934.

Counts 4, 5, 6, 7, and 8 originated as claims 1, 6, 3, 4, and 5 of Heddon's patent No. 1,961,970, granted June 5, 1934, upon an application filed originally February 15, 1933, and later divided, the grant being upon a divisional application dated January 12, 1934. Of these, counts 4, 5, and 6 appear as claims 9, 10, and 15 in the application of appellees, serial No. 738,102 above alluded to, and counts 7 and 8 appear as claims 1 and 2 in appellees' application, serial No. 738,830, filed August 7, 1934.

Counts 9 and 10 originated as claims 6 and 7 in Heddon's patent No. 1,961,969 granted June 5, 1934, upon an application filed February 15, 1933. They appear as claims 4 and 5 in appellees' application, serial No. 738,830 above named.

The interference was declared December 27, 1934. The preliminary statements of Heddon seem to have been filed January 24, 1935, and those of appellees January 28, 1935.

In view of the issues of the case a detailed recital of the several dates claimed, respectively, for conception and reduction to practice is unnecessary to our decision.

The principal issue as to all the counts relates to appellees' claimed reduction to practice.

■ As to counts 9 and 10, however, appellant seeks to raise here a question growing out of a motion to dissolve made by him on July 10, 1935. In substance, the motion alleged that appellees'· application failed to disclose the invention defined in those counts. The Examiner of Interferences dismissed the motion, "because brought late, and because the showing accompanying the motion is held insufficient to justify setting the motion." No further separate action as to those counts was sought of, or taken by, the tribunals of the Patent Office, and, seemingly, they were regarded by those tribunals, throughout the proceedings, as being in the same category with respect to conception and reduction to practice as the other counts. The appeal to

us is from the decision of the board and we are limited in our consideration to the issues which were before that tribunal. R.S. § 4911, 35 U.S.C.A. § 59a; R.S. § 4914, 35 U.S.C.A. § 62. The issue involved in the motion to dissolve not having been before the board, we may not consider it here.

■ Inasmuch as the filing dates of the applications of appellees were subsequent to the issuance of the patents to appellant, the rule applies that appellees must prove the essential elements of the case beyond a reasonable doubt.

Neither the Examiner of Interferences nor the Board of Appeals entered upon a detailed discussion of the testimonial record. Neither tribunal, under their respective views upon the matter of what constitutes reduction to practice of metallic fishing rods, seems to have deemed it necessary to make findings as to specific dates of conception of the invention defined in the counts. The Examiner of Interferences held, in substance, that the tests given the rods of appellees were not sufficient to constitute reduction to practice at any time prior to Heddon's filing dates, and that a showing of diligence by appellees during the critical period was lacking. The board disagreed with the Examiner of Interferences and held that the tests made prior to any claimed dates by Heddon were sufficient to constitute reduction to practice.

The brief on behalf of Heddon states that appellees "built certain fishing rods in 1927 and in 1928, which embodied counts 1 to 8 inclusive, and that this was prior to any date alleged on behalf of Heddon, * * *." So, prior conception of those counts is conceded to appellees. The situation with respect to counts 9 and 10 has been already recited.

Accordingly, the matter is resolved to a consideration of the tests shown to have been made by appellees.

Those tests consisted solely of castings made, largely in tournaments, with the use of the rods corresponding to the counts, there being, as the examiner held (a holding which was not challenged by the board), no "competent evidence that a fish was ever caught with a rod [of appellees] embodying the invention in issue."

The brief before us on behalf of appellees, after describing certain exhibits made in 1927 and 1928, we think fairly states what the testimonial record shows as to the tests made of appellees' rods as follows:

"These rods were tested immediately following making and repeatedly thereafter in the following different ways. First, there was an actual casting test where plugs weighing 1/4th, 1/2 and 5/8ths ounces each were cast by a line affixed to the rod in the usual manner, to various distances and with a high degree of accuracy. The record shows that during this period from 1927 to 1932 Kinnear won a number of tournament records and on one occasion made a world's distance record for the 5/8 ounce plug weight. On another occasion he won distance records employing the 1/4th and 1/2 ounce plug weights. On other occasions in other tournaments where the most highly skilled casters were in competition with him, as in the above cases, he won other events, these tests being supplemented by tests in the yard of the factory of the American Fork & Hoe Company at Geneva, Ohio, and elsewhere over pools of water, and the like, * * *."

The board said inter alia:

"After careful consideration of the briefs and the Examiner's decision, we are satisfied that the only question which requires discussion by us is whether tournament tests of a fishing rod of the type involved can be relied upon for a reduction to practice.

"While some of the rods employed in the tournaments were finally broken, we consider that the evidence is sufficient to show that the rods were found to be highly satisfactory for casting purposes. The witnesses for the party Cowdery and Kinnear testify that the strains put upon the rods in tournament casting is much more severe than in actual fishing. * * *

"We have given this matter very careful consideration and we agree with the examiner that in general a device should be tested in the manner that it is intended to be used but under some circumstances it has been recognized that other tests may be accepted as sufficient. We think in this instance that any experienced fisherman familiar with tournament casting would have no doubt of the utility of the rods used in the tournaments for fishing.

"We are of the view, therefore, that this is one instance in which use for the primary intended purpose is not necessary and we consider that the party Cowdery and Kinnear established a reduction to practice prior to any date that can be awarded to the senior party."

■ We feel constrained to agree with the holding of the board upon this question.

We appreciate the fact, as stated by the Examiner of Interferences, in substance, that the stresses placed upon a fishing rod in casting or when a weight is attached might, in some instances, differ, as to the points of strain, from the stresses which the rods undergo in the actual catching of fish. It seems to us most reasonable to assume that the stresses which the rods might encounter in catching fish also would differ according to the varying weights and movements of the fish caught. So, obviously, it would be difficult to determine, under the rule applied by the Examiner of Interferences, just when a sufficient test of a rod had been made in fishing. Various factors such as the weight, with perhaps the species of fish, and the character of the waters in which the fishing takes place, might have to be considered. It is our view that to one skilled in the art of fishing, the tests to which appellees' rods are shown to have been subjected were sufficient to demonstrate their utility and fitness for the ultimate use for which designed.

We regard the tests shown to have been made as having been more than mere "shop tests." They simulated, at least so far as casting is concerned, the actual use of the rod in fishing, and surely one skilled in the art must have been able fairly and reasonably to determine from those tests such matters of stress and strain as are likely to be encountered when casting for fish, and reasonably judge of their capacity as to strength, flexibility, etc., in actual fishing.

■ It is academic that the question of what constitutes reduction to practice in the sense of the patent laws may depend in large part on the inherent nature of the article under scrutiny, together with a consideration of the use for which it is designed. In consequence few cases are to be found presenting substantially identical facts. No case involving fishing rods has been brought to our attention, but there are numerous cases, the reasoning of which seems here apposite. Among these may be cited Ernest Hedenskoog v. John Cayton Backus, 48 F.2d 408, 18 C.C.P.A., Patents, 1065; Smith v. Place, 84 F.2d 196, 23 C.C.P.A., Patents, 1260; Myers v. Roethel, 90 F.2d 122, 24 C.C.P.A., Patents, 1213.

The decision of the Board of Appeals is affirmed.

Affirmed.